UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CHARLES SWEETS,<br><br>                                    Plaintiff<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                                    Defendant. | Case No.:  19cv1816-BLM<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ ECF Nos. 10 and 12]** |

Plaintiff Michael Charles Sweets filed this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) of the Social Security Act ("Act") seeking judicial review of the final administrative decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for supplemental security income ("SSI") benefits for lack of disability.  See ECF No. 1[1] ("Compl.").  Before the Court are Plaintiff's motion for summary judgment [see ECF No. 10-1 ("Pl.'s Mot.")], Defendant's cross motion for summary judgment [see ECF No. 12-1 ("Def.'s Mot.")][2], Defendant's opposition to Plaintiff's motion for summary judgment [see ECF

---

[1] ECF page numbers are based on CM/ECF pagination.

[2] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the docket as two documents, ECF Nos. 12 & 13.  However, the

No. 13 ("Oppo.")], and Plaintiff's reply [see ECF No. 14 ("Reply")].  After careful consideration of the pleadings and supporting documents, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.

## PROCEDURAL BACKGROUND

On May 20, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 13, 2015.  Certified Administrative Record ("AR") at 15.  The claim was initially denied on August 27, 2015, and upon reconsideration on February 5, 2016.  Id.  Thereafter, Plaintiff filed a written request for hearing on February 16, 2016.  Id.

Plaintiff appeared and testified at an initial hearing held on October 18, 2017, in San Diego, California.  Id. at 64-95.  Valerie Williams, M.S., an impartial vocational expert ("VE"), also testified at the hearing.  Id. at 64, 95-101.  Post-hearing, the record was held open to provide Plaintiff an opportunity to attend a consultative orthopedic evaluation and for Plaintiff to submit updated medical records.  Id. at 15.  On May 31, 2018, after Plaintiff was provided a copy of the report from the consultative evaluation on May 8, 2018, Plaintiff requested a supplemental hearing, which the ALJ granted.  Id. at 413, 1424-1430.  Plaintiff appeared and testified at the supplemental hearing on September 9, 2018, in San Diego, California.  Id. at 40-63.

Plaintiff attempted to submit additional written evidence to the ALJ less than five business days before the September 9, 2018 supplemental hearing.  Id. at 41.  The evidence consisted of Plaintiff's workers' compensation settlement agreement between Plaintiff and his former employer, The Boeing Company, and additional medical records from Dr. Berry and a cardiologist's office.  Id. at 16.  The ALJ declined to admit this evidence because it did not meet the requirements of 20 CFR § 404.935(b), which requires such evidence to be submitted no later than five business days before the date of the scheduled hearing.  Id. (citing 20 CFR §

content of the documents is the same.  For clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot."

404.935(b)).   After the supplemental hearing, Plaintiff filed a motion to amend his alleged onset date to March 29, 2016.  Id. at 16, 339.  The ALJ denied Plaintiff's motion to amend the onset date.  Id. at 16.  The ALJ further determined that Plaintiff was not disabled under section 216(i) and 233(d) of the Social Security Act.  Id. at 16-17.  The ALJ's decision became the final decision of the Commission on September 6, 2019, when the Appeals Council denied Plaintiff's request for review.  Id. at 1.

On September 20, 2019, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) of the Act seeking judicial review of the final administrative decision of the Commission, which denied Plaintiff's application for SSI benefits for lack of disability. Compl. Plaintiff filed a motion for summary judgment on January 6, 2020 alleging that Defendant failed to meet his burden at step five, "the ALJ failed to use the Medical Vocational Profiles as directed by 20 C.F.R. § 404.1567[,]" "the ALJ failed to address non exertional limitations using clear and convincing reasons[,]" and "the Commissioner failed to provide jobs in the national economy which meet [Plaintiff's] residual functional capacity." Pl.'s Mot.  Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment on January 31, 2020 asserting that the ALJ properly (1) "found that Plaintiff could perform a modified range of medium work[,]" (2) "evaluated Plaintiff's Subjective Complaints[,]" and, (3) "relied on VE testimony at Step Five." Def.'s Mot.  Plaintiff replied by reiterating the arguments raised in his motion for summary judgment.  Reply.

### ALJ's DECISION

On October 3, 2018, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 15-31.  Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since March 13, 2015).  Id. at 18.  He then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "multilevel degenerative disc disease of the cervical and lumbar spine; spondylolistheses; anterolisthesis at C4-5 and L-4; spinal stenosis at C4-5 and C6-7; foraminal narrowing at C3-4 and C4-5 with lateral recess stenosis and segmental dysfunction of the thoracic and cervical

region and chronic lumbar strain/sprain (20 CFR 404.1520(c)).” Id.  At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments.  Id. at 20.  At step four, the ALJ considered Plaintiff's severe impairments and determined that his residual functional capacity (“RFC”) permitted him

> to perform medium work as defined in 20 CFR 404.1567(c), however, he could never climb ladders, ropes, or scaffolds, while he could frequently climb ramps, and stairs, balance, kneel, crouch and crawl, and could occasionally stoop; his push pull limitations would be equivalent to his lifting and carrying limitations; he could frequently perform bilateral overhead reaching; he must avoid concentrated exposure to noise over a moderate level and workplace hazards such as unprotected heights and dangerous or fast-moving machinery.

Id.  The ALJ found that while Plaintiff's “medically determinable impairments could reasonably be expected to cause the alleged symptoms;” Plaintiff's “statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.”  Id. at 29.  The ALJ further determined that while Plaintiff is unable to perform past relevant work, considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Id. at 29-30.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is “more than a mere scintilla, but may be less than a preponderance.”  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).  It is “relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion.”  Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  “In determining whether the [ALJ's] findings

1    are supported by substantial evidence, [the court] must review the administrative record as a

2    whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

3    conclusion.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted).  Where

4    the evidence can reasonably be construed to support more than one rational interpretation, the

5    court must uphold the ALJ's decision.  See Batson, 359 F.3d at 1193.  This includes deferring to

6    the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis, 236 F.3d

7    at 509.

8         Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions,

9    the court must set aside the decision if the ALJ failed to apply the proper legal standards in

10   weighing the evidence and reaching his or her decision.  See Batson, 359 F.3d at 1193. Section

11   405(g) permits a court to enter judgement affirming, modifying, or reversing the Commissioner's

12   decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social

13   Security Administration for further proceedings.  Id. Finally, the court will not reverse an ALJ's

14   decision for harmless error, which exists when it is clear from the record that "the ALJ's error

15   was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin.,

16   466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050,

17   1055-56 (9th Cir. 2006)).

18                                            **DISCUSSION**

19        Plaintiff argues the ALJ failed to (1) meet his burden of proof at step five of the five-step

20   sequential evaluation process by inaccurately applying the Medical Vocational Guidelines, (2)

21   address Plaintiff's non-exertional limitations using clear and convincing reasons, and (3) provide

22   jobs in the national economy which meet Plaintiff's RFC.  Pl.'s Mot at 13-24.  Plaintiff further

23   argues that the Court should reverse the decision of the ALJ, direct the Commissioner to find

24   Plaintiff disabled and entitled to benefits, and award Plaintiff reasonable attorney's fees.  Id. at

25   24.

26        Defendant contends that the ALJ properly found that Plaintiff could perform a range of

27   medium work and that his decision was supported by "ample evidence in the record."  Def.'s

28   Mot. at 6.  Defendant further contends that this Court should affirm the ALJ's decision.  Id.

A.   **The Commissioner's Burden at Step Five**

Plaintiff argues the ALJ failed to use the medical vocational profiles as directed by 20 C.F.R. § 404.1567.  Pl.'s Mot. at 14.  Specifically, Plaintiff argues that that ALJ failed to address Plaintiff's limitations in the use of his arms and hands and in lifting, reaching and stooping which prevent Plaintiff from performing the full range of medium work.  Id. at 15-17.  Plaintiff also argues that the ALJ's finding was an independent determination unsupported by medical documentation and without adequate explanation.  Id. at 18.

Defendant contends that Plaintiff misrepresents his argument as a challenge to the Commissioner's step five determination that Plaintiff was not disabled when he is really disputing the ALJ's decision that Plaintiff has an RFC for medium work.  Def.'s Mot. at 9.  Defendant further contends that "[s]ubstantial evidence overwhelmingly supports the ALJ's RFC for a range of medium work" and notes that the ALJ's finding were supported by four different medical sources. Id.

Plaintiff replies that Defendant "is mistaken" and merely engages in "post hoc rationalization" by providing reasons to support the ALJ's decision that are not a part of the record.  Reply at 4.  Plaintiff further replies that since the ALJ found that Plaintiff cannot perform the full range of medium work, the RFC found by the ALJ directs disability under the medical vocational profiles.  Id. at 5.

1.   Relevant Law

An ALJ determines whether a claimant can perform his or her past relevant work at the fourth step of the five-step sequential process. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  To conduct this analysis, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(e).  A claimant's RFC assessment is a determination of what the claimant can do despite his or her physical, mental, and other limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a); see also Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017). In determining a claimant's RFC, an ALJ must assess all the evidence (including the claimant's and others' descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite his or her impairment(s).  See 20 C.F.R. §§ 404.1545(a)(3),

416.945(a)(3); <u>Laborin</u>, 867 F.3d at 1153.  "[T]he adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1049 (9th Cir. 2017) (quotations and citations omitted).  RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." <u>See</u> 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." <u>Lester v. Chater</u>, 81 F.3d 821, 833 (9th Cir. 1995) (citing 20 C.F.R. §§ 404.1512(a)).  Determination of a claimant's RFC is an administrative finding exclusively reserved to the Commissioner through her delegate, the ALJ. <u>See</u> 20 C.F.R. § 404.1527(d)(2) (indicating that an RFC determination is not a medical opinion); <u>see also</u> 20 C.F.R. § 404.1546(b) (identifying the ALJ as responsible for determining RFC).  "It is clear that it is the responsibility of the ALJ [. . .] to determine residual functional capacity." <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001).

The step four analysis requires the ALJ to review a claimant's RFC and the physical and mental demands of the work he or she has previously performed. <u>See</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1231 (9th Cir. 2010).  If the ALJ determines the claimant has the RFC required to perform this past work, the claimant is found not disabled.  "At step four, a claimant has the burden to prove that he cannot perform his past relevant work 'either as actually performed or as generally performed in the national economy.'" <u>Stacy v. Colvin</u>, 825 F.3d 563, 569 (9th Cir. 2016) (quoting <u>Lewis v. Barnhart</u>, 281 F.3d 1081, 1083 (9th Cir. 2002)).  If the ALJ determines that the claimant is not able to perform the past work, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in light of his RFC, age, education, and work experience. <u>See</u> 20 C.F.R. § 404.1520(g).  At this stage, the SSA has the limited burden of providing evidence that demonstrates that other work exists for the claimant in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. <u>See</u> 20 C.F.R. § 404.1560(c).

2.   <u>Burden of Proof</u>

As an initial matter, the Court agrees with Defendant's contention and finds that "Plaintiff

conflates the burden of proof at Step 4 with the burden of proof at Step 5 [and] mistakenly conclud[es] that residual functional capacity is established at Step 5 and is therefore the Social Security Administration's burden." Massimo v. Comm'r of Social Security, 2019 WL 3892325, at *9 (E.D. Cal., Aug. 19, 2019).  The RFC determination is made by the ALJ and Plaintiff bears the burden of proof at Step 4 to show that he cannot perform any past relevant work.  Lopez v. Berryhill, 2018 WL 501547, at *4 (C.D. Cal., Jan. 18, 2018) (9th Cir. 2001) ("At step four, Plaintiff bears the burden of proof to show he is incapable of performing his past relevant work.") (citing Lockwood v. Comm'r Social Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2001)); see also Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) ("At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work "either as actually performed or as generally performed in the national economy.") (quoting Lewis, 281 F.3d at 1083).  At Step 5, the ALJ bears the burden to show that Plaintiff can perform other work. Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001) ("Commissioner has the burden of proof for step five.").  Here, Plaintiff's argument relates to and challenges the ALJ's RFC determination.  See Streeter v. Berryhill, 2019 WL 1060041, at *2 (E.D. Cal., Mar. 6, 2019) ("Claimant's first argument, that she does not have the residual functional capacity ("RFC") to perform medium work, is not actually a challenge to the step-five analysis. It is a challenge to the ALJ's RFC determination, which takes place before proceeding to step four. This challenge relates to claimant's arguments regarding the weight of medical evidence."); see also Massimo, 2019 WL 3892325, at *9.

3.    Medical-Vocational Profiles

Plaintiff argues that the ALJ erred because he failed to use the Medical-Vocational Profiles ("Grids") as directed by 20 C.F.R. § 404.1567.  Pl.'s Mot. at 14.  Defendant contends that the Grids do not apply to Plaintiff's case because he has non-exertional limitations and that the "ALJ appropriately elicited VE testimony to determine to what extent the additional limitations eroded the unskilled, medium occupational base."  Def.'s Mot. at 9 n.3.

At Step 5, the burden is on the ALJ to show that Plaintiff can perform some other work that exists in significant numbers in the national economy.  This may be done by using the

testimony of a VE or by reference to the Grids.  See Lounsberry v. Barnhart, 468 F.3d 1111, 1114 (9th. Cir 2006).  The Grids provide a shorthand method for determining the availability and number of suitable jobs for a claimant.  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  The Grids categorize jobs by three physical "exertional" levels, consisting of sedentary, light, and medium work.  Id.  The exertional levels are further refined by the claimant's age, education and work experience.  Id.  The Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category.  Id.  A claimant must be able to perform the full range of jobs in an exertional category for the Grids to apply.  Id.  The Grids are predicated on a claimant suffering from exertional impairments and may not address a scenario where a claimant suffers from non-exertional limitations.  See Lounsberry, 468 F.3d at 1115.  "Where a claimant suffers only exertional limitations, the ALJ must consult the grids.  Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence.  Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first."  Lounsberry, 468 F.3d at 1115 (citing Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989)).  "In cases involving both exertional and nonexertional limitations, the grids are consulted first to determine whether a finding of disabled can be based on exertional limitations alone.  If so, the grids direct a finding of disability which the Commissioner must accept.  If not, the ALJ must use the grids as a framework for consideration of how much the nonexertional limitations limit the range of work permitted by the exertional limitations."  Watts v. Astrue, 2010 WL 1854075, at *5 (C.D. Cal., May 6, 2010)  (citing Cooper, 880 F.2d at 1155-1157 and Tackett, 180 F.3d at 1102).

"Limitations are classified as exertional if they affect your ability to meet the strength demands of jobs."  20 C.F.R. § 404.1569a(a).  A claimant is considered to only have exertional limitations where "symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling."  20 C.F.R. § 404.1569a(b).  Limitations other than sitting, standing, walking, lifting, carrying, pushing, or pulling are non-exertional limitations.  20 C.F.R. § 404.1569a(a).  Some examples of non-exertional limitations or restrictions include "difficulty functioning because you are nervous,

9

19cv1816-BLM

anxious, or depressed;" "difficulty maintaining attention or concentrating;" "difficulty understanding or remembering detailed instructions;" "difficulty in seeing or hearing;" "difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or" "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(i-vi).  If a claimant's impairments are only non-exertional, "the rules in appendix 2 do not direct factual conclusions of disabled or not disabled. The determination as to whether disability exists will be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in appendix 2."  20 C.F.R. § 404.1569a(c)(2); see also 20 C.F.R. § Pt. 404, Subpt. P, App. 2 ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.").

Here, the ALJ determined the Plaintiff is able to meet the exertional requirements of medium work.  AR at 20, 30.  Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c). Plaintiff's ability to perform the full range of medium work is impeded only by non-exertional limitations such as  (1) never climbing ladders, ropes or scaffolds, (2) only frequently climbing ramps and stairs, balancing, kneeling, crouching and crawling, and performing bilateral overhead reaching, (3) only occasionally stooping, and (4) avoiding concentrated exposure to noise over a moderate level, unprotected heights, and dangerous or fast moving machinery.  AR at 20. Because Plaintiff "suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence." Lounsberry, 468 F.3d at 1115 (citing Cooper, 880 F.2d 1152, 1155) ("where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question, other testimony is required").

Accordingly, the ALJ did not err by failing to use the Grids.

4.    Residual Functional Capacity Challenges

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because he failed to address the exertional limitations (1) in the use of his arms and hands, (2) as to reaching and stooping, and (3) resulting from his rotator cuff disorder.  Pl.'s Mot. at 14-18.  Plaintiff also

asserts that the ALJ erred because he failed to provide an adequate explanation for the RFC. Id. at 18.

> A district court must uphold an RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. Id. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."

> An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor.

Nabil I. v. Saul 2020 WL 1332086, at *6 (C.D. Cal., Mar. 23, 2020) (citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); and Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017)) and (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

### a.   Relevant Medical Records

#### 1.   Dr. Amy Kanner

Plaintiff was examined by board eligible internist Dr. Amy Kanner on July 22, 2015 at the request of the Department of Social Services, Disability and Adult Programs. AR at 22, 497. Plaintiff's chief complaints at the examination were neck and lower back pain, chronic severe pain, high blood pressure, pre-diabetes, dizziness and vertigo, blurred vision, neck injury, and poor hearing with ringing of the ears. Id. at 497-498. Dr. Kanner reviewed Plaintiff's MRIs from March and June 2015 and noted multilevel disc desiccation without evidence of significant posterior disc bulging and spinal canal and cord well within normal limits, moderate disc desiccation with effacement of the ventral thecal sac on multiple levels, severe left neuroforaminal stenosis C4-C5, impingement on the left foraminal C4 nerve, and neuroforaminal stenosis C6-7 with impingement of the right C7 nerve. Id. at 499. Dr. Kanner also noted a

previous orthopedics evaluation finding decreased sensation at C6 and C8.  Id.  After examining Plaintiff, Dr. Kanner found that Plaintiff was well-developed, well-nourished, obese and in no acute distress.  Id. at 500.  Plaintiff is right-handed and had a grip strength of 35, 40, 40 pounds on the right and 55, 60, 65 pounds on the left.  Id. at 500-501.  Plaintiff's lumbar spine examination showed tenderness to palpation at the base of the lumbar spine, positive straight leg raising test for supine on the right at 30/90 degrees and on the left at 45/90 degree, negative straight leg raising test at 90/90 degrees, and a range of motion of the back including forward flexion, extension and lateral flexion within normal limits.  Id. at 502.  The cervical spine examination showed some decrease of lordosis, tenderness to palpation from the cervical through the lumbar spine, right trapezius muscle tenderness to palpation and spasm with intact range of motion and flexion, extension, lateral flexion, and rotation within normal limits.  Id. Regarding Plaintiff's shoulders, Dr. Kanner found no tenderness to palpation, and that Plaintiff's range of motion of flexion, extension, abduction, adduction, external and internal rotation were within normal limits.  Id. at 503.  Dr. Kanner found that Plaintiff's hands showed no evidence of joint deformities, finger approximation was intact, and Plaintiff was able to make a fist and oppose the thumbs and fully extend his hand.  Id.  Dr. Kanner concluded that Plaintiff (1) could lift and carry 50 pounds occasionally and 25 pounds frequently, (2) could stand, walk, or sit for six hours of an eight-hour work day, (3) had the same push pull limitations as his lift/carry limitations, (4) could not climb ropes, ladders or scaffolding, (5) could frequently reach overhead, but had no other reaching limitations, (6) had no limitations on handling or fingering, (7) had no visual or communicative limitations, and (8) should avoid exposure to loud noise.  Id. at 505.

### 2.    Dr. Thomas J. Sabourin

Plaintiff was examined on May 8, 2018 by Dr. Thomas Sabourin, a board certified orthopedic surgeon.  Id. at 1424.   During the orthopedic consultation, which occurred at the request of the Department of Social Services, Disability and Adult Programs, Plaintiff presented with complaints of pain in the neck, shoulders, elbows, wrists, hands, upper back, lower back, hips, knees, ankles, and feet.  Id.  Dr. Sabourin reviewed Plaintiff's medical history and

performed his own examination.  Id. 1424-1425.  Dr. Sabourin's examination revealed that Plaintiff sat and stood with normal posture, was able to rise from a chair with no difficulty, and walked slowly without apparent pain, limp, or assistive devices.  Id. at 1426.  Plaintiff's cervical spine examination showed mild tenderness in the paracervical muscles and no deformity or palpable spasm.  Id.  Plaintiff "cried out in pain and sat down holding his head in the chair" when doing right lateral flexion, but axial load testing caused only local pain.  Id.  Plaintiff refused to do back range of motion, but "had no difficulty sitting on the examination table with [his] legs straight out in front of him and getting on the examination table [Plaintiff was able to bend] forward 70 degrees."  Id.  Also, while Plaintiff was tender "from the occiput to the iliac crest across the broad expanse of the back without differentiation[,]" there was no deformity in the spine, scars, spasm, swelling, or warmth.  Id.  Dr. Sabourin noted that Plaintiff's supine and sitting straight leg raising was negative and only caused bilateral knee pain.  Id. at 1426.  His Trendelenburg test was also normal.  Id. at 1427.  Plaintiff grimaced and gestured when testing the range of motion in his shoulders and although there was no redness or swelling, he was mildly tender over both shoulders.  Id.  Plaintiff experienced pain throughout the entire range of motion.  Id.  Dr Sabourin found left and right shoulder mild impingement syndrome.  Id. at 1429.  Plaintiff's range of motion in his elbows, wrists, hips, ankles, and feet was "grossly normal and painless."  Id. at 1427-1428.  Plaintiff's hands and fingers showed a normal thumb and negative Tinel's and Phalen's tests.  Id. at 1427.  While Plaintiff complained of pain in the knees, there was no instability, redness, swelling, crepitus, effusion, or gross deformities and the McMurray test was negative.  Id.  Plaintiff's motor strength was intact in the upper extremities although he had "profound giving away in the lower extremities."  Id. at 1428.  Dr. Sabourin diagnosed Plaintiff with degenerative disc disease of cervical spine, mild to moderate, lumbar strain and sprain, chronic, bilateral patellar strain and sprain, mild, right shoulder mild impingement syndrome, left shoulder minimal impingement syndrome, and right hand dorsal contusion was resolved.  Id. at 1429.  Dr. Sabourin concluded that "the severity and duration of [Plaintiff's] complaints [were] in significant disproportion to the determinable condition."  Id. at 1429, 25.  Dr. Sabourin opined that while Plaintiff does appear to have some problems in his

cervical spine, he could find no neurological deficit, atrophy, or similar in the lumbar spine.  Id.
Further, Dr. Sabourin noted that Plaintiff's "weakness did not correspond to what one would
expect," noting he felt that Plaintiff's weakness was "feigned."  Id.  Dr. Sabourin found that
Plaintiff could occasionally lift and carry fifty pounds, frequently lift and carry twenty-five pounds
with equivalent limits on pushing and pulling, stand, walk, and sit for six hours of an eight hour
work day, frequently climb, stoop, kneel, and crouch, and frequently work with his arms above
shoulder level.  Id. at 1429.  Plaintiff had manipulative limitations, but no need for assistive
devices to ambulate.  Id.

In a Medical Source Statement of Ability to do Work-Related Activities (Physical), also
completed on May 8, 2018, Dr. Sabourin noted that Plaintiff had mild shoulder impingement
and checked boxes indicating that Plaintiff can continuously lift/carry up to ten pounds,
frequently lift/carry eleven to twenty pounds, occasionally lift/carry twenty-one to fifty pounds,
and never lift/carry fifty-one or more pounds.  Id. at 1431.  It also states that Plaintiff can sit,
stand, or walk for six hours of an eight hour work day, reach overhead frequently, reach in all
other directions, handle, finger, feel, push/pull continuously, and climb stairs and ramps, ladders
or scaffolds, balance, stoop, kneel, crouch, and crawl frequently.  Id. at 1432-1434.  Plaintiff
can never work at unprotected heights, can frequently move mechanical parts, tolerate extreme
cold, and heat, and vibrations and continuously tolerate operating a motor vehicle, humidity and
wetness, and dust, odors, fumes, and pulmonary irritants.  Id. at 1435.

### 3.   Dr. Jae H. Chon

Plaintiff commenced treatment with Dr. Jae H. Chon on March 20, 2015 after Plaintiff
injured himself at work while driving a forklift.  Id. at 581-584.  On March 20, 2015, Dr. Chon
conducted an Initial Comprehensive Orthopedic Evaluation of Plaintiff and found decreased
range of motion of the neck, decreased sensation in the right C6 and C8 distribution, and no
fracture or dislocation of the thoracic spine.  Id. at 581-582.  Dr. Chon wrote that he wanted
Plaintiff to stop working due to severe pain and that he intended to start Plaintiff on therapy for
his neck twice a week.  Id. at 583.  Plaintiff saw Dr. Chon again on May 7, 2015 for reevaluation.
Id. at 578.  Dr. Chon found decreased sensation in the right C6 and C8 and increased pain with

19cv1816-BLM

range of motion.  Id. at 578.  Dr. Chon suggested that Plaintiff continue physical therapy and requested an MRI.  Id.  Dr. Chon also continued Plaintiff's Temporary Total Disability ("TTD") status.  Id.  On June 16, 2015, Dr. Chon stated that the preliminary MRI information "seems to show the right side of C4-5 tightening up with a recess area at the foramen" and continued Plaintiff's TTD status.  Id. at 570.  On July 30, 2015, Dr. Chon read the MRI to show that Plaintiff had "severe foraminal narrowing at the C3-C4 and C4-C5.  Id. at 568.  Dr. Chon also discussed Plaintiff's ankle which was swollen but unrelated to his neck concerns and recommended chiropractic and acupuncture treatment noting that if the treatment did not work, he would recommend a C4-C5 epidural injection.  Id.  On September 10, 2015, Dr. Chon continued Plaintiff's TTD status and noted that they were awaiting authorization for treatment.  Id. at 566.  On October 22, 2015, Dr. Chon noted that Plaintiff was experiencing 25% improvement and "was more than halfway done."  Id. at 564.  On November 19, 2015, Plaintiff was noticing 20% improvement after undergoing chiropractic and acupuncture treatment and Dr. Chon recommended 12 more weeks of treatment and possible epidural injection if treatments failed.  Id. at 562.  Plaintiff's TTD status was continued.  Id.  On February 18, 2016, Dr. Cho noted that Plaintiff was "undergoing chiropractic treatment and acupuncture and noticing significant improvement of the pain in the lower back and midback and with sciatica."  Id. at 703.  Plaintiff returned to Dr. Chon on April 14, 2016 and reported that he was noticing improvement.  Id. at 701.  Dr. Chon released Plaintiff to "light duty with a lifting limit of fifty pounds."  Id.  Plaintiff returned to Dr. Chon again on May 26, 2016.  Id. at 699. Plaintiff complained of continued neck pain radiating to the left shoulder and arm.  Id.  Plaintiff reported that the acupuncture was very helpful, and Dr. Chon continued Plaintiff's light duty work status with a lifting limit of fifty pounds. Id.  On June 2, 2016, Plaintiff returned to Dr. Chon for a pain flare up in his hip area.  Id. at 705.  Dr. Chon noted that "[p]reviously therapy was very helpful to reduce the patient's symptoms" and recommended physical therapy twice a week.  Id.  Plaintiff returned to Dr. Chon on August 4, 2016.  Id. at 697.  Dr. Chon requested additional chiropractic and acupuncture treatment that was denied, and Plaintiff was considering the epidural injection.  Id.  Dr. Chon continued Plaintiff's light duty work status with a lifting limit of fifty pounds.  Id.  On September

22, 2016, Dr. Chon found that Plaintiff had increased pain with range of motion and continued neck pain radiating to his left shoulder and shoulder blade area with "anterior listhesis at C4 and C5 with numbness and tingling going to the right C6 and C8 distribution." Id. at 695.  Dr. Chon noted that previous chiropractic and acupuncture treatment worked and recommended continuing those treatments and continuing Plaintiff's light duty work status with the fifty pound lifting limit.  Id.

On October 20, 2016, Dr. Chon completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff.  Id. at 843-847.  Dr. Chon diagnosed Plaintiff with cervical listhesis, degenerative disc disease, and sciatica.  Id. at 843.  Dr. Chon wrote that (1) Plaintiff's pain symptoms would frequently interfere with his attention and concentration necessary for simple work tasks, (2) Plaintiff was only capable of performing low stress jobs, (3) Plaintiff could only sit or stand for forty-five minutes at a time, every sixty minutes, (4) Plaintiff would need to walk for fifteen minutes, and (5) Plaintiff needed a job that would permit him to shift positions at will and take unscheduled breaks one to five times a day for ten to fifteen minutes.  Id. at 844-846.  Dr. Chon also wrote that Plaintiff could rarely climb stairs, look down, turn his head right or left, look up, twist, stoop, crouch/squat, climb ladders, or climb stairs and occasionally lift and carry fifty pounds or less and hold his head in a static position.  Id. at 846.  Dr. Chon found that Plaintiff did not have any significant limitations with reaching, handling, or fingering and concluded that Plaintiff was "capable of working a full-time work scheduled at any level of exertion (8 hours per day, 5 days per week)."  Id. at 846-847.

### b.   Plaintiff's Limitations to the Use of His Arms and Hands

Plaintiff first argues the ALJ erred in finding he could perform medium work because he failed to consider Plaintiff's limitations in using his arms and hand.  Pl.'s Mot. at 15.  Plaintiff asserts that his arm/hand limitations prevent him from performing medium work because "the use of the arms and hands . . . are necessary to grip, hold, and turn objects. . ."  Id. at 15 (citing Social Security Ruling ("SSR") 83-10).[3]  Plaintiff explains that Dr. Kanner evaluated Plaintiff and

---

[3]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying

1    found his grip strength to be 35, 40, 40 pounds on the right, and 55, 60, 65 pounds on the left.

2    Id.; see also AR 500.  Plaintiff argues that this reduced grip strength means he has difficulty

3    grasping with his hands and therefore is unable to perform a medium level of work.  Id.  Plaintiff

4    contends the ALJ failed to address this limitation.  Id.  Defendant does not specifically address

5    Plaintiff's arm and hand limitations, but notes that "[s]ubstantial evidence overwhelmingly

6    supports the ALJ's RFC for a range of medium work."  Def.'s Mot. at 9.

7        Unfortunately for Plaintiff, Dr. Kanner does not support Plaintiff's argument.  AR at 497-

8    506.  While Dr. Kanner does note the grip strength and sensory decrease stated by Plaintiff, Dr.

9    Kanner does not opine that the grip strength is weak, that the sensory reduction in the hand(s)

10   is significant, or that either limits Plaintiff's activities in any way.  Id.  In fact, Dr. Kanner opines

11   that Plaintiff does not have any limitations in handling or fingering.  Id. at 505.

12       In determining Plaintiff's RFC, the ALJ carefully and accurately recited Dr. Kanner's

13   findings.  Id. at 22-23.  The ALJ specifically noted Dr. Kanner's sensory decrease finding.  Id.

14   The ALJ also considered Dr. Kanner's overall conclusion that Plaintiff "can lift and carry 50

15   pounds occasionally and 25 pounds frequently" with equivalent push pull limitations, stand, walk,

16   or sit for six hours of an eight hour day, and frequently reach overhead with no other reaching

17   limitations or limitations on handling or fingering.  Id. at 23, 505.  The ALJ clearly stated that he

18   afforded "[g]reat weight" to Dr. Kanner's opinion and that her assessment was consistent with

19   her findings as well as Plaintiff's medical records as a whole.  Id. at 23.

20       The ALJ also considered the findings of Dr. Sabourin in determining Plaintiff's RFC with

21   regard to any arm or hand limitations.  Id. at 25-26.  Among other things, the ALJ noted that

22   Dr. Sabourin found that Plaintiff's elbows, wrists, hands, and fingers were grossly normal and

23   concluded that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds

24   frequently with equal push/pull limitations.  Id. at 25.  The ALJ also considered Dr. Sabourin's

25   observation that Plaintiff refused to participate in some of the testing and appeared to be

26

27

28   of objects weighing up to 25 pounds. If someone can do medium work, we determine that he
     or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

feigning weakness.  Id.  The ALJ afforded great weight to the findings of Dr. Sabourin which were consistent with other evidence in the medical records.[4]  Id. at 26.  Finally, the ALJ considered the findings of Dr. Chon, but noted that he gave little weight to his opinions because they were largely based on subjective complaints rather than the totality of the objective evidence and appeared "overly restrictive in light of [Plaintiff's] own testimony, as well as his limited use of heavy medication and conservative treatment with generally good results."  Id. at 24.  Dr. Chon did find that Plaintiff could occasionally lift fifty pounds.  Id. at 846.

Plaintiff has not identified a doctor who supports his "grip" argument.  In contrast, the ALJ considered the findings of several doctors before determining the proper RFC for Plaintiff.[5]  Id. at 20-31.  The ALJ discussed these findings by different doctors in his analysis and explained the weight given to each and the reasoning behind those decisions.  Id.  Accordingly, the ALJ's decision that Plaintiff could perform medium work despite any limitation in the use of his hands and arms was supported by substantial evidence.

        c.    Plaintiff's Limitations as to Reaching and Stooping[6]

Plaintiff argues that the ALJ failed to consider his limitations regarding reaching and

---

[4] While not specifically highlighted by the ALJ, Dr. Sabourin found that Plaintiff could continuously use both hands for non-overhead reaching, handling, fingering, feeling, and pushing/pulling.  Id. at 1433.

[5] In addition to considering the findings of examining Drs. Kanner and Sabourin and treating Dr. Chon, the ALJ considered the conclusions of State Agency consultants Drs. Post and Taylor-Holmes who reviewed Plaintiff's medical records.  AR at 29.  Both doctors concluded that Plaintiff could perform a medium range of work activity lifting fifty pounds occasionally and twenty-five pounds frequently with no climbing of ladders, ropes, or scaffolds, frequent climbing of ramps and stairs, frequent balancing, kneeling, crouching, crawling, bilateral overhead reaching, and no concentrated exposure to noise or workplace hazardous such as unprotected heights, dangerous or fast moving machinery.  Id. (citing AR at 125-127, 148-150).  Dr. Post concluded that Plaintiff would be limited to occasional stooping while Dr. Taylor-Holmes concluded that Plaintiff would be limited to frequent stopping.  Id. at 29, 126, 149 The ALJ gave great weight to these opinions which he found to be consistent with the evidence as a whole.  Id. at 29.

[6] Plaintiff entitles this section of his motion as "Sweets has limitations as to reaching and stooping[,]" but only discusses the stooping limitations.  Pl.'s Mot. at 16.

1   stopping.[7]  Pl.'s Mot. at 16.  Plaintiff argues that pursuant to SSR 83-14 "to perform the full
2   range of medium work as defined, a person must be able to do both frequent stooping and
3   frequent crouching" which he is unable to do as evidenced by Dr. Kanner's findings in her
4   examinations of Plaintiff.  Id.  Defendant does not specifically address Plaintiff's reaching and
5   stooping limitations, but notes that "[s]ubstantial evidence overwhelmingly supports the ALJ's
6   RFC for a range of medium work."  Def.'s Mot. at 9.  Plaintiff also argues that the ALJ erred in
7   assigning Plaintiff an RFC for medium work which requires frequent stooping while also limiting
8   Plaintiff to occasional stooping.  Reply at 4.  Plaintiff argues this error is not harmless and that
9   because Plaintiff is unable to perform the full range of medium work, the ALJ's RFC directs
10  disability under the medical vocational profiles.  Id. at 4-5.

11          As explained above, the ALJ carefully considered Dr. Kanner's findings regarding Plaintiff's
12  straight-leg raising tests, Dr. Kanner's understanding of Plaintiff's MRI scans, and Dr. Kanner's
13  diagnosis.  AR at 22-23.  Notably, Dr. Kanner did not limit Plaintiff's stooping.  Id. at 497-506.
14  The ALJ gave great weight to Dr. Kanner's opinion, including her conclusions that Plaintiff's
15  "range of motion of the cervical spine was intact in all ranges," his "range of motion of the back
16  [was] within normal ranges," and Plaintiff's upper and lower extremities were all normal.  Id. at
17  22.  The ALJ also considered Dr. Kanner's finding that while Plaintiff was limited to frequent
18  overhead reaching, there were no limitations for all other reaching.  Id. at 23, 505.  As such,
19  Dr. Kanner's findings provide substantial evidence supporting the ALJ's stooping limitation.

20          Dr. Sabourin's findings also support the ALJ's determination.  As discussed above, the ALJ
21  gave great weight to the findings of Dr. Sabourin who concluded that Plaintiff could frequently
22  stoop and frequently work with his arms above shoulder level.  Id. at 25-26, 1429.  The ALJ also
23  considered the findings of Plaintiff's treating physician, Dr. Chon, who found that Plaintiff could
24  rarely stoop or crouch but, as explained above, gave little weight to his conclusions which were

25  _____

26  [7] SSR 83-14 defines stooping and crouching as "stooping (bending the body downward and
27  forward by bending the spine at the waist) and crouching (bending the body downward and
    forward by bending both the legs and spine)."
28

19

1    based on subjective complaints and appeared overly restrictive.  <u>Id.</u> at 24.  Finally, the ALJ

2    considered the differing opinions of Drs. Post and Taylor-Holmes, and gave slightly greater

3    weight to Dr. Post who opined that Plaintiff could occasionally stoop as opposed to Dr. Taylor-

4    Holmes who opined Plaintiff could frequently stoop.  <u>Id.</u> at 29; <u>see</u> <u>also</u> <u>Supra</u> at n.5.  Thus, the

5    ALJ's decision that Plaintiff could perform medium work with an additional limitation of occasional

6    stooping is supported by substantial evidence.

7         Plaintiff's argument that the ALJ erred by stating that Plaintiff could perform medium

8    work while simultaneously limiting his stooping to occasional is without merit.  While it is true

9    that the *full* range of medium work usually requires frequent stooping, it is also true that a

10   limited range of medium work does not necessarily require the same.  SR 83-14 states that "to

11   perform the *full* range of medium work as defined, a person must be able to do both frequent

12   stooping and frequent crouching--bending both the back and the legs--in order to move objects

13   from one level to another or to move the objects near foot level." (emphasis added).  Here, the

14   ALJ has clearly stated that Plaintiff does not have the RFC to perform the full range of medium

15   work due to his additional limitations.  <u>Id.</u> at 30.  Instead, the ALJ found that Plaintiff could

16   perform a *restricted* range of medium work and defined that range to encompass Plaintiff's

17   additional limitations, including only occasional stooping.  AR at 20.  The ALJ presented a

18   hypothetical to the VE that incorporated all of Plaintiff's limitations to medium work (including

19   only occasional stooping) and the VE testified that there were jobs that exist in significant

20   numbers in the national economy that Plaintiff could perform.  <u>Id.</u> at 98; 95-101; 30-31.  The

21   ALJ did not err in this regard.  <u>See</u> <u>Avery v. Astrue</u>, 2012 WL 6861207, at *4 (S.D. Ohio, Dec.

22   12, 2012) ("the complete text of SSR 83–10 does not indicate that a claimant must be able to

23   do 'frequent' bending, stooping, and crouching even for a restricted range of medium work.

24   Instead, that ruling states that '[t]he considerable lifting required for the *full* range of medium

25   work *usually* requires frequent bending-stooping.' Similarly, SSR 83–14 explains that frequent

26   stooping and crouching are required only for the "full" range of medium work) (emphasis in

27   original) (citing <u>Bumgardner v. Sec. of Health and Human Servs.</u>, 917 F.2d 24 (6th Cir.1990)

28   (Table, text available in Westlaw) (affirming non-disability decision where claimant had the

1   exertional ability to perform medium work, rejecting claimant's argument that SSR 83–10

2   mandates a restriction to light work based upon ability to stoop only "occasionally")).

3                   d.      Plaintiff's Rotator Cuff Disorder

4           Plaintiff next argues the ALJ failed to address Plaintiff's rotator cuff disorder which

5   prevents Plaintiff from frequently lifting and failed to address neck, shoulder, and spine objective

6   testing. Pl.'s Mot. at 16-18.  Plaintiff lists a number of observations made by Dr. Sabourin during

7   his evaluation of Plaintiff that the ALJ allegedly failed to address and specifically complains that

8   the ALJ never explained Dr. Sabourin's indication on Plaintiff's Medical Source Statement that

9   Plaintiff could "never carry over 50 pounds, occasionally carry 21 to 50 pounds[,] and frequently

10  carry 11 to 20 pounds." Id. at 16-17 (citing AR 1431).   Plaintiff argues that in light of these

11  failures, the ALJ's finding is not supported by substantial evidence.   Id. at 18.   Defendant did

12  not specifically address Plaintiff's rotator cuff disorder, but noted that four different medical

13  source providers opined that Plaintiff can perform medium work.   Def.'s Mot. at 9. Plaintiff's

14  argument is not supported by the record.

15          First, the ALJ did "address neck, shoulder, and spine objective testing."  Pl.'s Mot. at 17-

16  18.  The ALJ specifically noted the results of Dr. Sabourin's objective tests including the range

17  of motion of Plaintiff's cervical spine [see AR at 25 ("range of motion of his cervical spine

18  indicated forward flexion of 0-40 degrees, extension and right rotation of 0-20 degrees and left

19  rotation of 0-45 degrees.")], the rotations of Plaintiff's neck [see id. ("[i]n performing left and

20  right rotations of his neck, it was noted that [Plaintiff] would just move his shoulder and would

21  not rotate the neck")], and the range of motion of Plaintiff's shoulders [see id. ("[o]n examination

22  of [Plaintiff's] shoulders, it was noted that both shoulders had a full range of motion.")].

23          Second, the ALJ considered Plaintiff's subjective complaints of pain to Dr. Sabourin.  Id.

24  at 25.  The ALJ noted Plaintiff's refusal to perform certain tests for Dr. Sabourin due to pain and

25  that Plaintiff had severe gesturing and grimacing, but he also considered that:

26          Dr. Sabourin reported that given the nature of [Plaintiff's] problems, he felt that
27          [Plaintiff] did have some problems in this [sic] cervical spine; however, he could
            find no neurological deficit, atrophy or similar in the lumbar spine.   [Plaintiff's]
28

                                                    21

weakness did not correspond to what one would expect; and therefore, the doctor felt that [Plaintiff's] weakness was feigned.

Id. at 25, 1429.

In addition to the May 8, 2018 summary report of the Orthopedic Consultation Dr. Sabourin completed, he also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) on May 8, 2018.  Id. at 1431-1436.  The Medical Source Statement is inconsistent with the summary report with respect to Plaintiff's lift and carry limitations.  Id. As stated above, the summary report states that

> Given the nature of this individual's problems, I feel he has some limitations.  He could lift or carry 50 lb occasionally 25 lb frequently.  He could stand and walk 6 hours of an 8-hour workday and sit for 6 hours of an 8-hour workday.  Push/pull limitations are equal to lift/carry limitations.  He could climb, stoop, kneel, and crouch frequently. He has manipulative limitation.  He can work with his arms above shoulder level only frequently.  He has no need for assistive devices to ambulate.

Id. at 1429.  The Medical Source Statement, which is a check box style form, states that Plaintiff can continuously lift/carry up to ten pounds, frequently lift/carry eleven to twenty pounds, occasionally lift/carry twenty-one to fifty pounds, and never lift/carry fifty-one or more pounds. Id. at 1431.  It also states that Plaintiff can sit, stand, or walk for six hours of an eight hour work day.  Id. at 1432.  While the form notes a mild impingement, it states that Plaintiff can reach overhead frequently and reach in all other directions, handle, finger, feel, push/pull continuously.  Id. at 1433.  The form also states that Plaintiff can climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, and crawl frequently.  Id. at 1434.  Plaintiff can never work at unprotected heights, can frequently move mechanical parts, tolerate extreme cold, and heat, and vibrations and continuously tolerate operating a motor vehicle, humidity and wetness, and dust, odors, fumes, and pulmonary irritants.  Id. at 1435.

Plaintiff argues that Dr. Sabourin's finding that Plaintiff can frequently carry twenty-five pounds "appears to be part of a boiler plate" because in the Medical Source Statement, Dr. Sabourin notes that Plaintiff has a shoulder impingement.  Pl.'s Mot at 17 n.2.  Defendant does

1  not discuss the conflicting lift/carry weight limitations.  Def.'s Mot.

2       The ALJ does not discuss the conflicting lift/carry restrictions presented by Dr. Sabourin

3  in medical records from the same date.  However, the ALJ is not required to "discuss every piece

4  of evidence" when interpreting the evidence and developing the record and the "failure to cite

5  specific evidence does not indicate that such evidence was not considered[.]"  Black v. Apfel,

6  143 F.3d 383, 386 (8th Cir.1998).   In addition, an ALJ need only discuss evidence that is

7  probative or significant.  Howard v. Barnhart, 341 F.3d at 1012 (citing Black, 143 F.3d at 386).

8  From the ALJ's order, it is clear that the ALJ reviewed and considered Dr. Sabourin's May 8,

9  2018 findings as he specifically cited to the Exhibit containing the findings and discussed much

10  of the content.  AR at 25-26.

11       Even if the ALJ erred by not addressing the conflict, the Court finds that the error was

12  harmless. Harmless error occurs if the error is "inconsequential to the ultimate nondisability

13  determination."  See Robbins, 466 F.3d at 885; see also Stout, 454 F.3d at 1055–56.   Errors

14  that do not affect the ultimate result are harmless.  See Parra v. Astrue, 481 F.3d 742, 747 (9th

15  Cir. 2007). "[A] reviewing court cannot consider [an] error harmless unless it can confidently

16  conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

17  different disability determination."  Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing

18  Stout, 454 F.3d at 1055–56).  Here, even if full credit is given to Dr. Sabourin's finding that

19  Plaintiff can frequently lift or carry eleven to twenty pounds and occasionally lift and carry

20  twenty-one to fifty pounds, Plaintiff would still not be considered disabled as the ALJ specifically

21  asked the VE if there were sufficient jobs in the national economy for a person with Plaintiff's

22  RFC but who could only carry twenty pounds occasionally and ten pounds frequently.  Id. at 99.

23  While the VE replied that such a person would be unable to perform the medium range positions

24  of warehouse worker, courtesy clerk, or hand packer, the VE stated that such a person would

25  be able to work as a ticket taker, cashier II , or assembler production.  Id.

26       Additionally, the ALJ gave great weight to the medical opinions of three doctors other

27  than Dr. Sabourin.  AR at 23, 29.  Each of those doctors found that Plaintiff could lift or carry

28  fifty pounds occasionally and twenty-five pounds frequently.  Id. at 125-27, 148-50, 505.  The

1  ALJ only gave little weight to Dr. Chon's opinions, but Dr. Chon also found that Plaintiff could

2  occasionally lift and carry fifty pounds and was capable of working a full-time work schedule.

3  Id. at 24, 846-847.  Therefore, even without the lift/carry findings of Dr. Sabourin, the ALJ had

4  substantial evidence supporting his findings that despite Plaintiff's rotator cuff disorder, and

5  neck, shoulder, and spine objective test results, he could frequently lift and carry twenty-five

6  pounds and occasionally lift and carry fifty pounds.

7                    e.    Independent Determination

8        Finally, Plaintiff contends the ALJ's RFC determination was made without "adequate

9  explanation of the record, without specific support from a medical source, and with no testimony

10  from a medical expert."  Pl.'s Mot at 18.  Defendant contends that Plaintiff's argument ignores

11  the "four medical opinions that supported the ALJ's conclusion that Plaintiff was not disabled

12  and could perform a range of medium work."  Def.'s Mot. at 15.   The Court agrees with

13  Defendant.

14        Here, the ALJ's findings were supported by four medical sources, including Drs. Kanner,

15  Sabourin, Post, and Taylor-Holmes—each opining that Plaintiff could perform a medium range

16  of work (with some limitations or modifications).  AR 125-27, 148-50, 505, 1429. For example,

17  Dr. Kanner opined that Plaintiff would be able to lift and carry 50 pounds occasionally and 25

18  pounds frequently with equivalent limitations on pushing and pulling.  Id. at 23, 505.   Drs. Post

19  and Taylor-Holmes also found that Plaintiff could perform a medium range of work.  Id. at 29.

20  Dr. Sabourin opined that Plaintiff's motor examination was intact in the upper extremities and

21  Plaintiff exhibited normal sensation, and no neurological deficits.  Id. at 1428-29.  Dr. Sabourin

22  also noted that Plaintiff's reported weaknesses did not correspond to what one would expect

23  and therefore concluded they were "feigned."  Id. at 1429.  Even discounting the ALJ's reliance

24  on Dr. Sabourin' lift and carry limitations, three other doctors that the ALJ considered and

25  evaluated opined that Plaintiff could perform a medium range of work.  Id. at 125-27, 148-50,

26  and 505. Additionally, the ALJ provided a detailed analysis of the medical experts and explained

27  his RFC findings.  Id. at 15-31.  Accordingly, the Court finds that the ALJ's finding was not an

28  independent determination without support from a medical source in the record.

1

        f.    Conclusion

2     Substantial evidence supports the ALJ's RFC determination for Plaintiff.  Id. at 122-127,

3  135-138, 147-150, 500-506, 1424-1430.   The ALJ did not fail to consider Plaintiff's various

4  limitations when determining Plaintiff's RFC, did not fail to use the GRIDS, and properly used the

5  testimony of a VE to determine whether jobs exist in the national economy that Plaintiff can

6  perform.  Id. at 20-29.   Accordingly, Plaintiff motion as to these issues is **DENIED** and

7  Defendant's cross motion is **GRANTED**.

8     **B.    Non-Exertional Limitations**

9     Plaintiff argues that the ALJ failed to address Plaintiff's non-exertional limitations using

10 clear and convincing reasons.[8]  Pl.'s Mot. at 18.  Specifically, the ALJ did not "consider the impact

11 of Plaintiff's poor vision and hearing on his ability to work."  Id. at 19.  Defendant contends that

12 the "ALJ specifically considered Plaintiff's allegations that he had blurred vision and poor hearing"

13 and that Plaintiff fails to address Dr. Kanner's finding that Plaintiff does not need any visual

14 limitations or provide any explanation for his claim of moderate hearing loss.  Def.'s Mot. at 11-

15 12.  Defendant further contends that the ALJ's RFC finding is supported by substantial evidence

16 in the record and that even if Plaintiff suffers from moderate hearing loss, he has failed to show

17 that that loss is not accounted for in the ALJ's RFC finding.  Id. at 12.

18        1.    Plaintiff's Hearing Loss

19     In reaching his decision, the ALJ considered the findings from Plaintiff's July 22, 2015

20 appointment with Dr. Kanner.  AR at 19.  During the appointment, Plaintiff complained of poor

21 hearing with ringing in the ears that he believed stemmed from working in noisy machine shops

22 from 1980-1985.  Id. at 19, 499.  Plaintiff reported that the poor hearing began in 2007 and

23

24 [8] Because Plaintiff refers to the clear and convincing standard, it is unclear if Plaintiff is raising
   this argument as a subjective symptom argument or as an argument regarding the alleged
25 failure of the ALJ to consider the vision and hearing impairments and alleged use of lay
   observations when assigning Plaintiff's RFC. Defendant included his arguments in response to
26 this claim in the section of his opposition regarding the ALJ's RFC determination and not the
   section regarding Plaintiff's subjective complaints.  Def.'s Mot. at 11-12.  The Court interprets
27 Plaintiff's argument as a challenge to the ALJ's RFC determination and therefore will use the
28 substantial evidence standard.

19cv1816-BLM

that he was informed after a recent hearing test that he had "a little bit of loss in some areas". Id. After examining Plaintiff, Dr. Kanner reported normal findings including that Plaintiff "was able to hear normal conversational volume and able to hear finger rub easily bilaterally and air conduction was greater than bone conduction" and that his external auditory canals were without evidence of exudates (fluid) or erythemea (superficial reddening of the skin). Id. at 19, 501. Dr. Kanner concluded that Plaintiff had "decreased hearing with tinnitus – exam within normal limits" and that Plaintiff "should avoid exposure to loud noise, due to his history of hearing loss." Id. at 23, 504-505.

The ALJ also considered the April 26, 2018 findings regarding Plaintiff's hearing from Plaintiff's audiologist, Rosalia Alello, Au.D. Id. at 20. The findings from Rosalia Alello, Au.D., indicated that Plaintiff's hearing threshold levels ranged between 30 and 40 dB HL in both ears. Id. at 20, 1439. The ALJ noted that these findings are consistent with only mild hearing loss.[9] Id. at 20, 28, 1439.

Plaintiff argues that the ALJ failed to consider the impact of Plaintiff's hearing because the ALJ failed to consider a September 11, 2018 audiological examination and audiogram performed by Dr. Ambrose and instead independently dismissed Plaintiff's hearing loss based on his lay observations Pl.'s Mot. at 20. Plaintiff argues that the September report indicates that Plaintiff's hearing loss in his right ear is 40 dB HL and 45 dB HL in his left ear and that as a result of the diminished hearing in both ears, Plaintiff was fitted for hearing aids.[10] Id. at 20. Plaintiff further argues that these findings by Dr. Ambrose represent a moderate, not mild, hearing loss

---

[9] "[P]ersons with mild hearing loss have thresholds that are 25 to 40 dB higher than normal." See How to Read an Audiogram and Determine Degrees of Hearing, NATIONALHEARINGTEST.ORG (available at: https://www.nationalhearingtest.org/wordpress/?p=786) (last visited July 16, 2020).

[10] Plaintiff cites to AR at 1439 in support of her argument, but AR 1439 is the April 26, 2018 Audiological Evaluation by Rosalia Alello, Au. D. not a September 11, 2018 audiological examination by Dr. Ambrose. AR at 1439. A September 11, 2018 report is included in the AR at 1503-1506.

and that the ALJ's observation that Plaintiff heard him "just fine" at the hearing is not substantial evidence in support of his findings.[11]   Id.   Defendant does not address Plaintiff's arguments regarding the September 11, 2018 report.  Def.'s Mot. at 14-15.

The ALJ does not discuss the September 11, 2018 examination results.  AR at 15-31.  To make a disability determination, an ALJ must develop the record, interpret the medical evidence, a consider the combined effect of all of a Plaintiff's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923.  However, the ALJ is not required to "discuss every piece of evidence" when interpreting the evidence and developing the record and the "failure to cite specific evidence does not indicate that such evidence was not considered[.]"  Black, 143 F.3d at 386.  In addition, an ALJ need only discuss evidence that is probative or significant.  Howard, 341 F.3d at 1012 (citing Black, 143 F.3d at 386).  While the ALJ did not specifically discuss the September 18, 2018 report by Dr. Ambrose, he did address Plaintiff's other medical records related to his hearing and included a limitation related to his hearing in the RFC.  AR at 19-20.  Even if the ALJ erred with respect to the September 18, 2018 report, Plaintiff has not identified any hearing limitations that were not accounted for in the ALJ's RFC finding which limited Plaintiff to avoiding concentrated exposure to noise over a moderate level.  Plaintiff also has not shown that the alleged error was

---

[11] Plaintiff further argues that the ALJ based his findings regarding Plaintiff's hearing on his independent findings and lay observations at the hearing.  Pl.'s Mot. at 20.  While the ALJ did comment on his observations of Plaintiff's hearing loss during the September 9, 2018 hearing, the ALJ did not include those observations in his written decision and there is no indication that he relied on those observations in making his final decision about Plaintiff's symptom testimony.  The ALJ asked Plaintiff's counsel if she wanted to be heard on the issue of whether Plaintiff's hearing loss was a severe impairment and she responded that medical evidence regarding the hearing loss was submitted and that last week Plaintiff got fitted for hearing aids.  The ALJ stated that he did not see the hearing loss as a severe impairment and noted "[a]gain you hear me just fine right now, and this is a normal hearing-type of thing, which means that obviously, quite frankly, I have a hearing loss.  It's one of those things - - the question is whether or not it impacts her ability to do work.  It doesn't mean that we don't consider it, but if it doesn't impact your ability to do work, then it is not something that we usually particularly take note of."  AR at 42-44.

1  not inconsequential to the ALJ's non-disability determination.  Accordingly, the Court finds the

2  ALJ did not err in this regard.

3         2.   <u>Plaintiff's Vision</u>

4      Plaintiff argues that the ALJ also failed to consider the impact of Plaintiff's vision loss on

5  his ability to work.  Pl.'s Mot. at 19.  Defendant contends that "[t]he ALJ specifically considered

6  Plaintiff's allegations that he has blurred vision."  Def.'s Mot. at 11.

7      In reaching his decision, the ALJ noted that during his July 22, 2015 consultation with Dr.

8  Kanner, Plaintiff reported that his vision blurred occasionally "when his neck is in pain" and that

9  "his vision is well corrected with glasses."  <u>Id.</u> at 19, 498.  Dr. Kanner noted that Plaintiff's

10  peripheral vision on the right was 80 degrees and 70 degrees on the left.  <u>Id.</u> at 501.  Dr. Kanner

11  also opined that Plaintiff had no visual limitations.  <u>Id.</u> at 505.

12      Here, the ALJ considered the opinion of Dr. Kanner and concluded that based on her

13  findings, Plaintiff's poor vision did not greatly impact his ability to work.  <u>Id.</u> at 19, 22-23.  Plaintiff

14  does not raise any specific evidence or opinions that the ALJ failed to consider regarding his

15  visual limitations and instead generally states that the "ALJ failed to address [Plaintiff's] poor

16  vision."  Pl.'s Mot. at 19.  The Court disagrees.  Plaintiff's statement to Dr. Kanner that "his vision

17  is well corrected with glasses" and Dr. Kanner's finding that Plaintiff does not require any visual

18  limitations are substantial evidence in supporting of the RFC assigned by the ALJ.  AR at 19.

19  **C.**  **<u>Plaintiff's Subjective Complaints</u>**

20      Plaintiff argues the ALJ failed to address his non-exertional limitations and failed to

21  provide clear and convincing reasons for rejecting those limitations, and as such, his findings

22  are not supported by substantial evidence.  Pl.'s Mot. at 18.  Specifically, Plaintiff contends the

23  ALJ failed to consider the impact of Plaintiff's pain, and the effects of his medication.  <u>Id.</u> at 19-

24  21.  Defendant contends that the ALJ properly evaluated Plaintiff's subjective complaints and

25  that since there was evidence of malingering and/or symptom magnification in the record, the

26  clear and convincing standard should not apply.  Def.'s Mot. at 13.

27         1.   <u>Relevant Law</u>

28      The Ninth Circuit has established a two-part test for evaluating a claimant's subjective

19cv1816-BLM

symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted).  The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id.  If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citation omitted). "Affirmative evidence of malingering—standing alone—can support an ALJ's rejection of the plaintiff's testimony." John R. v. Comm'r of Social Security, 2020 WL 1819869, at *3 (W.D. Wash., Apr. 10, 2020) (citing Schow v. Astrue, 272 F. App'x 647, 651 (9th Cir. 2008) (The existence of "affirmative evidence suggesting malingering vitiates the clear and convincing standard of review") (internal quotation marks omitted)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d at 834).  The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted).  An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Thomas, 278 F.3d at 958–59 (internal quotation marks and citation omitted); see also 20 C.F.R. § 404.1529(c).  If the ALJ's finding is supported by substantial

19cv1816-BLM

1   evidence, the court may not second-guess his or her decision.  See Thomas, 278 F.3d at 959;

2   Carmickle, 533 F.3d at 1162-63 (where the ALJ's credibility assessment is supported by

3   substantial evidence, it will not be disturbed even where some of the reasons for discrediting a

4   claimant's testimony were improper).

5              2.    Analysis

6       As an initial matter, neither party contests the ALJ's determination that Plaintiff has the

7   following severe impairments: "multilevel degenerative disc disease of the cervical and lumbar

8   spine; spondylolistheses; anterolisthesis at C4-5 and L-4; spinal stenosis at C4-5 and C6-7;

9   foraminal narrowing at C3-4 and C4-5 with lateral recess stenosis and segmental dysfunction of

10  the thoracic and cervical region and chronic lumbar strain/sprain (20 CFR 404.1520(c))."  AR at

11  18.  Because the ALJ determined that Plaintiff's "medically determinable impairments could

12  reasonably be expected to cause the alleged symptoms"—a finding that is not contested by

13  either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is

14  satisfied.  Id. at 29; see also Lingenfelter, 504 F.3d at 1036; Pl.'s Mot.; Def.'s Mot.

15      The next prong, whether there is evidence of malingering, is less clear.  Defendant

16  contends that "there was evidence of malingering or symptom magnification in the record" and

17  as such, the "clear and convincing standard should not apply."  Def.'s Mot. at 13.  Plaintiff does

18  not address the malingering contention. Pl.'s Mot.; see also Reply.  "It is still an open question

19  in the Ninth Circuit whether the ALJ must make a specific finding of malingering or whether a

20  lesser standard of 'mere evidence of malingering' in the record is sufficient to avert application

21  of the clear and convincing standard."  Escobar v. Colvin, 2016 WL 354416, at *12 n.2. (S.D.

22  Cal., Jan. 4, 2016) (citing Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9, 207 Soc. Sec. Rep. Serv.

23  404, Unempl. Ins. Rep. (CCH) P 15285C (9th Cir. 2014)).  Here, while the ALJ recognized Dr.

24  Sabourin's observation that Plaintiff's weakness was feigned, he did not make a specific finding

25  regarding Plaintiff's alleged malingering.  AR at 15-31.  Accordingly, the Court will "will err on

26  the side of caution and apply the clear and convincing standard to the ALJ's credibility

27  determination."  Escobar, 2016 WL 354416, at *18 n.2 ("err[ing] on the side of caution and

28  apply[ing] the clear and convincing standard to the ALJ's credibility determination where there

19cv1816-BLM

was evidence of malingering in the record but the ALJ did not make a specific finding.); see also Williams v. Berryhill, 2018 WL 3007963, at *4 (S.D. Cal., June 15, 2018) (noting that the ALJ did not use the word malingering and stating that "the Court will assume without deciding that "symptom exaggeration" is not equivalent to "malingering.").

The ALJ provided several reasons for finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record," which are summarized below:

- Plaintiff's allegations of disability were inconsistent with his daily activities (first reason);

- the objective medical evidence did not support Plaintiff's allegations of a disabling physical impairment or combination of impairments and related symptoms (second, third, fourth, fifth, sixth, seventh, eighth, and tenth reasons);

- the record does not contain any opinions from treating or examining physicians indicating that Plaintiff is disabled or has limitations greater than those determined by the ALJ (ninth reason).

AR at 27-29.  Plaintiff appears to challenge only the ALJ's treatment of Plaintiff's reported pain and side effects from medication.[12]  Pl.'s Mot. at 18-21.

a.   Plaintiff's Subjective Complaints of Pain & The Effects of His Medications

Plaintiff argues that the ALJ failed to consider Plaintiff's pain in determining RFC.  Pl.'s Mot. at 19.  Plaintiff argues that both Dr. Kanner and his chiropractor noted his pain, that Plaintiff explained how his pain limits his ability to function, and that the ALJ dismissed his pain allegations without properly considering them.  Id. at 20.  Defendant contends that "the ALJ considered Plaintiff's allegations contained in his function report and testimony that he had

---

[12] As discussed above, Plaintiff also argues that the ALJ failed to consider the impact of Plaintiff's vision and hearing loss.  See supra at 25-28.  Plaintiff presented these arguments with regard to the ALJ's alleged failure to consider medical records as opposed to the ALJ's improper discrediting of symptom testimony, so the Court addressed them in Section B.  Moreover, as set forth in that section, the ALJ did consider those losses and there is substantial evidence supporting the ALJ's RFC determination in that regard.

1   disabling pain and limitations" and provided specific, legally supported reasons for finding that

2   Plaintiff's allegations were not fully supported by the record.  Def.'s Mot. at 14.

3        Plaintiff also argues that the ALJ improperly dismissed the effect of Plaintiff's medication

4   on his RFC.  Pl.'s Mot. at 21.  Specifically, Plaintiff argues that the ALJ failed to address Plaintiff's

5   testimony regarding the side effects of his medication and improperly substituted his lay

6   observations as substantial evidence that Plaintiff's pain medication did not support a disabling

7   level of pain.  Id.  Plaintiff cites to the ALJ's comment that Plaintiff's use of Flexeril several times

8   per week, Vicodin three times per week, and daily Ibuprofen was not a level of pain medication

9   that supported a disabling level of pain in support of his argument that the ALJ improperly

10  inserted his own lay observation regarding the necessary amount of pain medication required

11  for one to be disabled.  Id.  Defendant contends that Plaintiff's argument is without merit and

12  that Plaintiff fails to identify any supporting medical evidence for his position.  Def.'s Mot. at 15.

13  Defendant notes that the ALJ's finding that Plaintiff's level of pain medication was inconsistent

14  with disability "was supported by the opinions of the four medical sources who concluded that

15  Plaintiff could work."  Id.

16              i.    Plaintiff's Testimony

17       In a July 4, 2015 Exertion Questionnaire, Plaintiff reported that he wakes up with severe

18  back pain and has a difficult time walking without pain and that the pain varies in intensity

19  depending upon the location of the pain on his body.  Id. at 353.  Plaintiff also reported that the

20  pain is diminished in part by physical therapy, aqua therapy, and rest.  Id.  Plaintiff stated that

21  he walks a quarter of a mile on the treadmill once a week, but is in a lot of pain afterward, he

22  is in constant pain when driving, and he could no longer do housework or yard work due to back

23  pain and spasms.  Id. at 353-355.  Plaintiff further stated that he sometimes wears a brace to

24  stabilize his neck or uses a cane when in pain.  Id. at 355.  Plaintiff noted that he took 5mg of

25  Hydrocodone and 325 mg of Acetaminophen every six hours as needed, 50mg of Indomethacin

26  as needed, 50-0.2 mg of Diclofenac/Misoprostol twice daily, 600 mg of Gabapentin three times

27  a day, and 5 mg of Cyclobenzaprine as needed.  Id.

28       On October 18, 2017, Plaintiff testified that his right shoulder seems to be getting better

with physical therapy and that he takes Arthrotec[13] and Neurotin in the morning and Hydrocodon in the afternoon depending upon his pain level.  Id. at 85-86.  His pain and the medications he has or has not taken impacts whether or not he needs a nap and for how long.  Id. at 87. Plaintiff testified that pain interferes with his sleep at night, and that he will take Flexural if it is very bad.  Id.  Plaintiff further testified that his medicines can make him drowsy and when asked if he has noticed "any cognitive issues, memory problems, things like that[,]" Plaintiff responded "yeah" without further explanation.  Id. at 87-88.  Plaintiff stated that he could sit for about thirty minutes before needing to move due to pain and stand for thirty minutes to an hour.  Id. at 89.  Plaintiff noted that the weather impacts the type and degree of pain he feels and that his baseline constant pain level is a four out of ten while a pain flare is a nine out of ten.  Id. at 90.  Plaintiff testified that he can lift thirty to fifty pounds, but that he tries to stay away from the higher end of that range because it will cause him some additional pain.  Id. at 91-92.  He also stated that bending and crouching cause him additional pain and that his mid-back pain is the worst.  Id. at 92.  The mid back pain radiates down his right shoulder, but therapy has somewhat diminished that pain.  Id. at 93.

At the September 9, 2018 Supplemental Hearing, Plaintiff testified that his goal is to "get off of the pills as much as possible" and that some days he took a lot of medicine to enable him to perform certain activities, but on other days he did not have to take much medicine.  Id. at 52.  If Plaintiff has been lifting things, he will feel the pain within two days.  Id.  Plaintiff stated that somedays he can work for three hours with just Ibuprofen.  Id.  Plaintiff also testified that with a combination of a hot shower and Ibuprofen, he can lift items but that the pain will catch up with him.  Id. at 54.  Plaintiff uses  "home remedies, over-the-counter remedies that [] keep

---

[13] The transcript lists the drug as Orthotech but notes that that is the phonetic spelling.  AR at 86.  The Court believes the proper drug name is Arthrotec.  The generic name for Arthrotec is Diclofenac-Misoprostol.  "Diclofenac is known as a nonsteroidal anti-inflammatory drug (NSAID). Misoprostol protects the stomach from diclofenac's irritating effects.  This combination medication is used to treat arthritis in people at high risk of getting stomach/intestinal ulcers and complications from the ulcers (such as bleeding)."  https://www.webmd.com/drugs/2/drug-5080/arthrotec-50-oral/details.

[him] in a position where [he] can maintain a normal [life]." Id. When the pain gets severe, Plaintiff takes Vicodin and Hydrocodone, but it masks the pain and he often ends up pushing himself more than he should and suffering for it later. Id. at 54-55. Plaintiff uses Vicodin approximately three times a week when his body's pain reaches about a seven on a scale of one to ten. Id. at 58. Plaintiff testified that about once a month his pain will be so severe he cannot function, but that chiropractic treatment has been very beneficial and helpful and that since his 2015 injury, with chiropractic care and other therapeutic treatment, his overall pain has lessened. Id. at 56, 58-59. Plaintiff takes Neurontin for his nerve pain and when he takes it the shooting pain does go away. Id. at 57. Plaintiff testified that he was getting better at managing his pain. Id.

In his September 18, 2018 Supplemental Hearing Brief, Plaintiff's counsel wrote that Plaintiff suffers from, low back pain  that "has persisted despite many months of physical therapy, ongoing chiropractic treatment and acupuncture treatments." Id. at 418. The brief also stated that Plaintiff has been experiencing significant pain, weakness and swelling in his right shoulder due to rotator cuff syndrome and that he is in significant pain when walking, standing, sitting for long periods, and reaching overhead. Id. Plaintiff experiences significant pain from his neck and lower back. Id. While Plaintiff has taken numerous medications over the year which caused insomnia, dizziness, and trouble with memory, focus, and concentration, Plaintiff now only takes Flexeril several times per week, 800 mg of Ibuprofen daily, and Vicodin three times per week. Id. at 419. The brief further stated that chiropractic care and aqua therapy help keep Plaintiff's pain manageable and that he has moved into a home with a spa/whirlpool "and since using it daily since July has improved significantly." Id. Finally, the brief states that Plaintiff's pain interferes with his ability to sleep and perform the activities of daily living and that Plaintiff must take frequent breaks and rest throughout the day. Id. at 420. Plaintiff experiences a pain flare up so severe that he is unable to get out of bed or leave his home at least twice a month and his medication "cause numerous debilitating side effect, including memory loss, cognitive problems, depression, fatigue, dizziness, and drowsiness. Id.
///

1

ii.    Subjective Complaints of Pain

2      Contrary to Plaintiff's argument that "the ALJ erred by failing to address [Plaintiffs]

3    pain[,]" the ALJ specifically considered and addressed Plaintiff's subjective complaints of pain

4    and provided clear and convincing reasons for rejecting those complaints.  Pl.'s Mot. at 19-20.

5    Plaintiff argues that the ALJ did not consider the findings of D.C. Berry noting Plaintiff's pain,

6    however, the ALJ considered and rejected D.C. Berry's findings which included a conclusion that

7    Plaintiff was not capable of working full time and was medically disabled.  Id. at 19; see also AR

8    at 24, 1421.  The ALJ gave little weight to D.C. Berry's opinion because it was "without significant

9    objective support from objective medical records, [wa]s very inconsistent with other evaluations

10   in the file done by orthopedist specialists, and [wa]s overly restrictive in light of the remainder

11   of the file and even [Plaintiff's] own testimony."  Id. at 24.  Plaintiff further argues that the ALJ

12   did not consider Dr. Kanner's notes regarding Plaintiff's complaints of pain.  Pl's Mot. at 20.

13   However, the ALJ considered Dr. Kanner's reports and her notes regarding Plaintiff's pain,

14   evaluated the complaints in light of Dr. Kanner's physical examination and objective medical

15   testing of Plaintiff, and gave great weight to Dr. Kanner's finding that despite Plaintiff's medical

16   history and pain, he could lift and carry 50 pounds occasionally and 25 pounds frequently with

17   equivalent limits on pushing and pulling.  Id. at 22-23.  Although not raised by Plaintiff, the ALJ

18   also considered the findings of Drs. Chon, Sabourin, Post, and Taylor-Holmes as they related to

19   Plaintiff's complaints of pain and his RFC.  Id. at 21-29.  The ALJ noted that three of those four

20   doctors opined that Plaintiff could perform medium work and that the only one who did not, Dr.

21   Chon, based his findings "largely on [Plaintiff's] subjective complaints rather than the totality of

22   the objective evaluations."  Id. at 24.  The ALJ gave little weight to Dr. Chon's opinion.  Id.

23      Plaintiff also argues that the ALJ improperly dismissed Plaintiff's own account of his pain.

24   Pl.'s Mot. at 20.  The Court disagrees.  The ALJ reviewed and considered Plaintiff's July 4, 2015

25   Exertion Questionnaire and Plaintiff's September 18, 2018 Supplemental Hearing Brief along

26   with his hearing testimony.  Id. at 26-27.  After considering Plaintiff's reports of pain and other

27   testimony, the ALJ noted that Plaintiff (1) reported that his pain is diminished in part by physical

28   therapy, aqua therapy, and rest, (2) testified at the first hearing that he has been improving

19cv1816-BLM

and weaning off of pain medication, and (3) testified he was currently taking just Flexeril several times a week, Vicodin three times a week, and daily Ibuprofen.  Id. at 26-27.

The Court finds that the ALJ has properly addressed Plaintiff's subjective complaints of pain and provided a clear and convincing reason for rejecting those complaints.  Id. at 27, 28-29.

### iii.    Effects of Plaintiff's Medication

Plaintiff does not identify any objective evidence in support of his argument that he suffered from side effects due to his medication.  Pl.'s Mot. at 21.  Instead, Plaintiff points to his own subjective testimony at the supplemental hearing in support of his argument.  Id.  While Plaintiff's alleged medication side effects are discussed in his October 17, 2017 Hearing Brief and September 18, 2018 Supplemental Hearing Brief [see AR at 406, 408, 419],  it does not appear that the alleged side effects and their impact on Plaintiff's ability to work are discussed elsewhere in the record.  Accordingly, the ALJ was not required to include a discussion of Plaintiff's side effects in his decision.  See Roquemore v. Comm'r of Soc. Sec. Admin., 374 Fed. Appx. 693, 695 (9th Cir. 2010) ("Nothing in the record suggests that [plaintiff's] ability to work was affected by his medications. Therefore, the ALJ was not required to include a discussion of side effects."); see also Mellow v. Commissioner of Social Security, 2019 WL 4138664, at *11 (E.D. Cal., Aug. 30, 2019) (finding that the ALJ did not err in failing to consider the side effects of plaintiff's medication where "plaintiff never alleged that the side effects of his (admittedly numerous) medications are disabling and there is no medical evidence that they are or would result in greater limitations than those assessed in plaintiff's RFC" and noting that while treatment notes reflected the side effects plaintiff testified about, "no provider indicated that they would impede plaintiff's ability to work.") (citing Roquemore, 374 Fed. Appx. at 695 and Norman v. Astrue, 2010 WL 4916373, at *5 (C.D. Cal. Nov. 23, 2010) (noting that numerous cases have held that an ALJ need not address medication side effects where there is no allegation they interfere with the ability to work beyond RFC assessed limitations, or there is no medical evidence of side effects severe enough to interfere with ability to work)); Atchison v. Astrue, 2012 WL 3143871, at *12 (E.D. Cal., Aug. 1, 2012) ("When no objective evidence in the

1  record suggests that a claimant's ability to work was hampered by his or her medications, an

2  ALJ is not required to include a discussion of side effects in the hearing decision").

3         b.   Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Complaints

4         Contrary to Plaintiff's argument, the ALJ not only addressed Plaintiff's subjective

5  complaints of pain and limitations due to the effects of his medication, the ALJ provided clear

6  and convincing reasons for rejecting those complaints.

7              i.   Activities of Daily Living

8         The first clear and convincing reason provided by the ALJ for rejecting Plaintiff's

9  complaints is that Plaintiff's activities of daily living are inconsistent with his claimed limitations.

10  AR at 27-28.  The ALJ found that Plaintiff's activities of daily living did "not indicate a disabling

11  level of impairment of [Plaintiff's RFC]."  Id. at 28.  In determining a plaintiff's credibility, an ALJ

12  may consider whether a plaintiff's daily activities are consistent with the asserted symptoms.

13  See Thomas, 278 F.3d at 958–59 (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th

14  Cir.1997)).  While the fact that a plaintiff can participate in various daily activities does not

15  necessarily detract from the plaintiff's credibility as to her specific limitations or overall disability,

16  "a negative inference is permissible where the activities contradict the other testimony of the

17  claimant, or where the activities are of a nature and extent to reflect transferable work skills."

18  Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010). "Daily activities support

19  an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged

20  in pursuits involving the performance of physical functions or skills that are transferable to a

21  work setting." Id. (citing Orn, 495 F.3d at 639; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d

22  595, 600 (9th Cir.1999).; Thomas, 278 F.3d at 959). "A claimant's performance of chores such

23  as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and

24  interacting with others has been considered sufficient to support an adverse credibility finding

25  when performed for a substantial portion of the day."  Id. at *5 (citing Stubbs-Danielson v.

26  Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Burch, 400 F.3d at 680–81; Thomas, 278 F.3d at

27  959; Morgan, 169 F.3d at 600; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)).

28         In his July 4, 2015 Exertion Questionnaire, Plaintiff wrote that on an average day he

1   participates in physical therapy, aqua therapy, and rests and that he tries to walk for a quarter
2   mile on the treadmill at least once a week.  Id. at 353.  He also wrote that he (1) climbs stairs
3   in his house to get to his bedroom, (2) lifts "small items" every day and can carry "small items"
4   100 ft., (3) does his own grocery shopping twice a week, and (4) drives an automatic car for no
5   more than an hour at a time.  Id. at 354.  Plaintiff notes that he is in a lot of pain after walking
6   on the treadmill, in constant pain when he drives, and can no longer do yardwork because it
7   causes back spasms and pain.  Id. at 353-355.  Plaintiff also notes that he naps two to three
8   times a day for approximately thirty to sixty minutes, uses a brace (to stabilize his neck when
9   he is in pain), uses a cane "to assist with walking during painful episodes[,]" and takes several
10  medications including Hydrocodone, Indomethacin, Diclofenac, Gabapentin, and
11  Cyclobenzaprine.  Id. at 355.

12       On October 18, 2017, Plaintiff testified that he (1) drives a car, (2) attends physical
13  therapy every Monday, (3) walks on the treadmill for fifteen minutes at the most or "tr[ies] to
14  walk around" (4) reads the paper, (5) takes his medication, (6) naps daily, sometime multiple
15  times in one day (20 out of every 30 days) for thirty minutes or more, (7) cooks simple meals
16  that take fifteen to twenty minutes to prepare or just bake in the oven, (8) occasionally sweeps
17  his garage, (9) tries to keep his small backyard clean which can be done in five to ten minutes,
18  (10) goes to the grocery store, and (11) can lift thirty pounds,  73, 85-88, and 91-92.

19       On September 9, 2018, Plaintiff testified that he (1) cleans out his storage unit, but must
20  take frequent breaks to stretch[14] (2) supervises contractors, (3) loads and unloads his truck in
21  small amounts, (4) moves boxes or items that are no more than fifty pounds, (5) does daily
22  exercises recommended by Dr. Berry, and (6) can drive if he has not been taking his medication
23  (Vicodin).  Id. at 51-62.  Plaintiff also testified that his pain was severe enough that he cannot
24  leave his bed or house at least once per month.  Id. at 56.  In his September 18, 2018
25  Supplemental Hearing Brief, Plaintiff wrote that he suffers from pain which has "severely limited

26

27  [14] Plaintiff notes that this activity which would have taken him less than two weeks at full
28  strength took him nearly eight months to complete.  AR at 52.

his activities of daily living" and that he receives assistance with basic household chores. Id. at 417-418, 420. He also wrote that at least twice a month he experiences pain flare ups that either prevent him from getting out of bed or leaving his home. Id. at 420.

The ALJ considered Plaintiff's questionnaire and testimony and the activities he has been engaged in, and concluded that Plaintiff's "primary limiting issue has been that these types of [activities] take longer than they did in the past, and require breaks." Id. at 26-27. In reaching his conclusion, the ALJ reasoned that Plaintiff's activities did not indicate a disabling level of impairment and that Plaintiff's testimony "tended to reflect that he believed he could still do many medium level work activities, such as lifting up to 50 pounds, but that he could simply not sustain those activities for long, and had to manage what he did in order to manage his later pain." Id. at 27-28. Here the ALJ's finding is properly supported by the record, and sufficiently specific. See Thomas, 278 F.3d at 958. The Court finds this is a clear and convincing reason. While it is true that the ALJ could have interpreted Plaintiff's testimony regarding his activities of daily living in a way that was more positive for Plaintiff, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. Burch, 400 Fed. F.3d at 680-681.

### ii.   The Medical Evidence & Opinions

The ALJ's remaining reasons for not accepting Plaintiff's symptom testimony relate to the ALJs' finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." Id. at 29. Defendant contends that the ALJ provided "numerous specific and legally supported reasons" for finding that Plaintiff allegations were not supported by the record and that because Plaintiff does not challenge all of the ALJ's specific reasons for discounting his subjective complaints, Plaintiff has waived the right to challenge all of the reasons. Def.'s Mot. at 14 (citing Cruz v. Int'l Collection Corp., 673 F.3d 991, 998 (9th Cir. 2012) ("We review only issues which are argued specifically and distinctly in a party's opening brief"); Thrasher v. Colvin, 611 Fed. Appx. 915, 918 (9th Cir. 2015) (unpublished) ("These arguments are waived because they were not raised in the opening brief"), citing Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.

19cv1816-BLM

1    1999)).

2         The ALJ identified specific ways in which the symptoms that Plaintiff described were

3    inconsistent with the medical evidence and opinions in the record.  AR at 20-29.  First, the ALJ

4    considered that on multiple occasions, Plaintiff reported to Dr. Chon that he was "noticing

5    improvement" with his medication and chiropractic and acupuncture treatments [id. at 21-23],

6    that Dr. Chon released Plaintiff to "light duty work status with a lifting limit of fifty pounds" [id.

7    at 21], that the cervical spine x-ray reviewed by Dr. Chon "showed only a slight listhesis of C4,

8    antherolisthesis of C4 on C5 and a mild narrowing of the foramen on the right side; otherwise

9    there was no major pathology seen" [id.], and that there were no obvious fractures or dislocation

10   on x-rays of the thoracic spine [id. at 23, 28].  The ALJ also considered the inconsistency

11   between the October 20, 2016 RFC Questionnaire that Dr. Chon completed finding that Plaintiff's

12   pain and other symptoms would interfere with the attention and concentration necessary to

13   perform even simple work tasks and Dr. Chon's opinion that Plaintiff was "capable of working a

14   full-time work schedule."  Id. at 23-24.  The ALJ stated that Dr. Chon's restrictive findings were

15   not consistent with Plaintiff's testimony, limited use of heavy medication, and conservative

16   treatment with generally good results.  Id.

17        Second, the ALJ also considered the medical evidence provided by Dr. Kanner.  Id. at 22-

18   23.  Dr. Kanner found, that Plaintiff's "upper and lower extremities were all grossly normal" and

19   his gait "was within normal limits" [id. at 22] and opined that Plaintiff could lift/carry/push/pull

20   fifty pounds occasionally and twenty-five pounds frequently, sit/stand/walk for six hours of an

21   eight-hour day, and had no limitations reaching in all directions.  Id. at 23.

22        Third, the ALJ considered the medical evidence from Dr. Sabourin that Plaintiff appeared

23   to walk without any apparent pain or limp during his May 8, 2018 appointment [id. at 25], his

24   shoulders had a full range of motion [id.], his elbows, wrists, hands, fingers, hips, ankles, and

25   feet were all grossly normal [id.], he had no difficulty sitting on the exam table with his legs

26   straight out in front of him [id. at 28], and that there was not neurological deficit, atrophy or

27   similar issue in the lumbar spine [id. at 28-29].  The ALJ also considered Dr. Sabourin's opinion

28   that Plaintiff's complaints were disproportionate to the determinable condition, that Plaintiff's

weakness was feigned, and that Plaintiff could lift/carry/push/pull fifty pounds occasionally and twenty-five pounds frequently, sit/stand/walk for six hours of an eight-hour day, and frequently climb, stoop, kneel, crouch, and work with his arms above shoulder level.  Id. at 25-26.  The AJL found Plaintiff's unwillingness to fully participate in the examination inconsistent with his own testimony regarding his limitations.  Id. at 26.  Specifically, the ALJ noted that while Plaintiff refused to do back range of motion movements for Dr. Sabourin because he claimed it would "hurt[,]" Plaintiff was able to sit on the examination table and bend forward 70 degrees without difficulty.  Id. at 28; see also Delbert F. R. v. Comm'r Soc. Sec. Admin., 2020 WL 1874114, at *4 (D. Or., Apr. 15, 2020) ("[a] determination that a claimant's subjective complaints are inconsistent with clinical observations can provide a clear and convincing reason for discrediting a claimant's testimony where the ALJ specifies how particular complaints are contradicted by particular clinical observations.") (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999) (citing Lester, 81 F.3d at 834).

Fourth, the ALJ considered the medical opinions of Drs. Post and Taylor-Holmes who found that Plaintiff could perform a medium level of work.  Id. at 29.

In summary, the ALJ identified numerous specific instances in which Plaintiff's claimed limitations were inconsistent with the medical evidence and properly concluded that "neither any of the [Plaintiff's] treating physicians or a State Agency physician ever opined that listing level limitations were ever met or equaled." Id. at 29.  A lack of medical evidence cannot be the sole basis for discounting Plaintiff's pain testimony.  Burch, 400 F3d at 680.  However, that is not an issue here where the ALJ also properly concluded that Plaintiff's activities of daily living are not consistent with his claimed pain and pain medication limitations.

c.    Conclusion

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.  See Lingenfelter, 504 F.3d at 1036.  As discussed above, the ALJ identified specific evidence in the record indicating that Plaintiff's activities of daily living and the medical evidence of Drs. Cho, Kanner, and Sabourin, were not consistent with Plaintiff's pain testimony and alleged medication side effects or with a disabling

1  level of impairment.   The Court has reviewed the record and finds substantial evidence

2  supporting these reasons and the ALJ's findings.   AR at 51-62, 125-127, 148-150, 353-355,

3  1426-1429.  The Court therefore **DENIES** Plaintiff's Motion for Summary Judgment on this issue

4  and **GRANTS** Defendant's Motion for Summary Judgment on this issue.  Carmickle, 533 F.3d at

5  1162-63 (where the ALJ's credibility assessment is supported by substantial evidence, it will not

6  be disturbed even where some of the reasons for discrediting a claimant's testimony were

7  improper).

8       D.      **Jobs in the National Economy**

9       Plaintiff argues the ALJ failed to identify jobs in the national economy that meet Plaintiff's

10  residual functional capacity.  Pl.'s Mot at 21.  Specifically, Plaintiff asserts that there was a conflict

11  between the testimony of the VE and the Dictionary of Occupational Titles ("DOT") which the

12  ALJ failed to reconcile and that therefore the ALJ failed to meet his burden of proof at step five[15].

13  Id. at 22-23.  Defendant contends that Plaintiff misrepresents his argument as a conflict between

14  the VE's testimony and the DOT when in reality, Plaintiff is trying to argue that the ALJ should

15  have included additional limitations in the RFC finding or hypothetical posed to the VE.  Def.'s

16  Mot. at 15.   Defendant also contends that the ALJ was not required to include additional

17  limitations because the hypothetical that he posed to the VE included the RFC limitations.  Id.

18  Defendant states that the ALJ met his burden at step five.  Id. a 16.  Plaintiff replies that the

19  ALJ is not excused from providing proper evidence just because the VE provided proper authority

20  and that the DOT "cannot be circumvented for standardization and uniformity of decisions."

21  Reply at 8.

22  ///

23

---

24

25  [15] Plaintiff also asserts the ALJ concluded that Plaintiff could perform the job of Warehouse
Worker, Hand Packer, and Courtesy Clerk, but failed to provide a reasonable explanation,

26  supported by evidence, that Plaintiff could fulfill the carry, lift, and move requirements of those
jobs given his rotator cuff syndrome and limitations in bending and raising his legs without pain.

27  Pl.'s Mot. at 23.  As set forth above, the Court already has determined that the ALJ properly
considered Plaintiff's medical limitations and that there is substantial evidence supporting the

28  ALJ's RFC.

19cv1816-BLM

1          1.    Relevant Law

2          At step five, an ALJ is permitted to rely on both the DOT and a VE's testimony to determine

3    whether the claimant is capable of performing other jobs.  Massachi v. Astrue, 486 F.3d 1149

4    (9th  Cir.  2007)  (stating  that  "In  making  disability  determinations,  the  Social  Security

5    Administration relies primarily on the Dictionary of Occupational Titles for 'information about the

6    requirements of work in the national economy.'   The Social Security Administration also uses

7    testimony from vocational experts to obtain occupational evidence") (quoting SSR 00-4p); see

8    also Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (stating that "[i]n addition to the DOT,

9    the ALJ relies on the testimony of vocational experts who testify about specific occupations that

10   a claimant can perform in light of his residual functional capacity).  The DOT is the presumptive

11   authoritative source on the characteristics of jobs.  See Pinto v. Massanari, 249 F.3d 840, 845-

12   46 (9th Cir. 2001).  However, a VE "may be able to provide more specific information about jobs

13   or occupations than the DOT."  SSR 00-4p, 2000 WL 1898704, at *3; see also Lamb v. Colvin,

14   2014 WL 3894919, *5 (E.D. Cal. Aug. 4, 2014).  "When a VE . . . provides evidence about the

15   requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask

16   about any possible conflict between that VE['s] . . . evidence and information provided in the

17   DOT."  SSR 00-4p, 2000 WL 1898704 at *4.  The adjudicator bears the responsibility of asking

18   the VE "if the evidence he or she has provided conflicts with information provided in the DOT"

19   and must "obtain a reasonable explanation" if the VE states that there is an "apparent conflict."

20   Id.  If the VE's testimony differs from the DOT, then the VE must provide a persuasive rationale

21   supported by the evidence to justify the departure.  See Light, 119 F.3d at 793.  However, a

22   VE's more specific testimony does not necessarily conflict with a generalized DOT classification.

23   See Alarcon v. Astrue, 2013 WL 1315968, at *3 (Mar. 28, 2013); see, e.g., Carey v. Apfel, 230

24   F.3d 131, 146–47 (5th Cir. 2000) (VE's testimony that Plaintiff could perform a job that required

25   some ability to finger and handle things even though Plaintiff only had one hand did not conflict

26   with the DOT); Johnson v. Astrue, 2011 WL 6132255, at *3–4 (C.D. Cal. Dec. 9, 2011) (Plaintiff's

27   restriction for overhead reaching did not preclude him from a job where the DOT classification,

28   which mentioned frequent lifting, did not explicitly mention overhead reaching and where

plaintiff himself stated that he was not required to reach overhead); <u>Rerkphuritat v. Astrue</u>, 2011 WL 5221883, at *4 (C.D. Cal. Nov. 2, 2011) (finding no conflict with the VE's testimony that the plaintiff, who had limitations on reaching with his right extremity, could perform a job where the DOT classification, which stated that the job required frequent reaching, did not state that the job required the ability to reach with both hands); <u>Espinosa v. Astrue</u>, 2008 WL 1833546, at *10–11 (E.D. Cal. Apr. 22, 2008) (finding that substantial evidence supported the ALJ's decision because "[a]lthough the ALJ did not expressly ask whether the positions identified were consistent with the DOT classifications, the VE's testimony demonstrates that she took into account the reaching restrictions").

    2.   <u>Analysis</u>

Here, the ALJ found at step four that Plaintiff could perform medium work but could never climb ladders, ropes or scaffolds, could only occasionally stoop, and had to avoid concentrated exposure to noise over a moderate level and unprotected heights and dangerous or fast moving machinery.  AR at 20.  Based on these limitations, the ALJ determined that Plaintiff was unable to perform his past relevant work as a material handler[16] which is a semi-skilled position because Plaintiff is "limited to a medium level of work activity and his past work is described as a heavy level or exertion; therefore, such work is precluded by the claimant's exertional and non-exertional limitations." <u>Id.</u> at 29-30.

At step five, the ALJ analyzed Plaintiff's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines and determined that Plaintiff's ability to "perform all or substantially all of the requirements of [medium work] has been impeded by additional limitations." <u>Id.</u> at 30.  The ALJ solicited input from a VE on "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and

---

[16] Under the DOT, a material handler is classified as heavy work – "Exerting 50 to 100 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or 10 to 20 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Medium Work." 929.687-030 MATERIAL HANDLER, DICOT 929.687-030. 1991 WL 688174.

1    [RFC]." Id. at 31.  The ALJ specifically asked whether there were jobs an individual of Plaintiff's

2    age, education, and work experience, who can sit and stand or walk for six hours in an eight

3    hour work day, and with Plaintiff's RFC to perform medium work but who was limited to never

4    climbing ladders, ropes or scaffolds, and had to avoid concentrated exposure to noise over a

5    moderate level, unprotected heights and dangerous or fast moving machinery could perform.

6    Id. at 98.   The VE responded that such an individual could perform medium work such as

7    warehouse worker, courtesy clerk, and hand packer.[17]  Id.  The ALJ then inquired as to whether

8    a similar individual who was also limited to occasional stooping would be able to perform the

9    same jobs without erosion.  Id. at 98-99.   The VE responded that he would.  Id. at 99.  Next,

10   the ALJ asked if there were jobs available for the same individual but with the ability to carry

11   twenty pounds occasionally and ten pounds frequently.   Id.  The VE responded that such an

12   individual would not be able to work as a warehouse worker, courtesy clerk, or hand packer,

13   but could work as a ticket taker, cashier II, or assembler production[18].   Id.   For his final

14   hypothetical, the ALJ asked the VE how the fact that an individual would be "off task consistently

15   for more than 12 percent of a work schedule" would affect that individual's employability.  Id.

16   at 100.  The VE responded that based on her professional knowledge and experience (not the

17   DOT), such an individual would be unable to retain employment.  Id.  The VE next clarified that

18   her responses to the other limitations mentioned in the ALJs hypotheticals were from the DOT

19   and noted that while the DOT does not address overhead reaching, "within the hypothetical, the

20   jobs that I gave would be able to be performed" based on her experience and professional

21   knowledge.  Id. at 100-101.  Plaintiff's attorney then asked the VE "how many days per month

22   would an employee be able to miss work, and still maintain employment?" to which the VE

23   responded "no more than one day a month."  Id. at 101.

24         Plaintiff has not identified any conflict between the VE's testimony and the DOT.  Instead,

25   Plaintiff argues that common experience demonstrates that the jobs of warehouse worker,

26   ─────────────────

27   [17] DOT 922.687-058, DOT 920.687-014, and DOT 920.587-018.

28   [18] DOT 344.667-010, DOT 211.462-010, and DOT 706.687-010.

courtesy clerk, and hand packer require the use of both hands to grip, carry, lift, and move twenty-five pounds frequently and fifty pounds occasionally which Plaintiff cannot do.  Pl.'s Mot. at 23.  This argument is insufficient.  See Hall v. Colvin, 2014 WL 1285914, at *9 (E.D. Wash. Mar. 31, 2014) ("[a] claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.").  As set forth above, the ALJ has provided substantial evidence in support of his RFC finding for Plaintiff which states that Plaintiff can perform a range of medium work, including frequently lifting and carrying twenty-five pounds and occasionally lifting and carrying fifty pounds.  See supra at 11-24.  Plaintiff's RFC and all of his limitations were properly included in the hypotheticals presented by the ALJ to the VE which formed the basis of her findings that Plaintiff could work as a warehouse worker, courtesy clerk, and hand packer.  AR at 30-31, 98-101.  Accordingly, the ALJ's reliance on the VE's responses to the hypotheticals was proper.  See Bayliss, 427 F.3d at 1217 ("[t]he ALJ's reliance on testimony the VE gave in response to the hypothetical [] was proper" where "[t]he hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."); see also Maria V. v. Saul, 2020 WL 3128569, at *7 (C.D. Cal., June 12, 2020) ("because substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations, and in turn, the ALJ did not err at step five of the sequential evaluation"); Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record"); and Cynthia L. R. v. Saul, 2019 WL 6790648, at *6 (C.D. Cal., Dec. 11, 2019) (finding plaintiff's argument that "it is impossible for her to perform the jobs identified by the VE" unavailing and the ALJ's reliance on the VE's testimony proper where "[t]he hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  The Court finds that the ALJ properly determined that there are jobs in the national economy that can be performed by a person with Plaintiff's RFC and therefore **DENIES** Plaintiff's Motion on this issue and **GRANTS** Defendant's Motion.

## **CONCLUSION**

Based on the above, the Court **GRANTS** Defendant's cross-motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment and **AFFIRMS** the decision of the Commissioner and dismisses this action with prejudice.  The Clerk of the Court shall enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

Dated:  9/25/2020

Hon. Barbara L. Major
United States Magistrate Judge

19cv1816-BLM